# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARLON LORENZO BROWN,

    Plaintiff

v.

DANTE TROMBA, et. al.,

    Defendants

Case No.: 2:17-cv-02396-APG-BNW

**Order Granting LVMPD and Tromba's Motion to Dismiss with Leave to Amend**

[ECF No. 101]

Plaintiff Marlon Lorenzo Brown sues the City of Las Vegas, the Las Vegas Metropolitan Police Department (LVMPD), Clark County, Steve Wolfson in his official capacity, Joseph Lombardo, and Dante Tromba under 42 U.S.C. § 1983 and Nevada law for alleged violations arising out of Brown's arrest while on bond.[1]  The operative complaint is Brown's third amended complaint at ECF No. 44. *See* ECF No. 96 at 23.  Brown asserts claims for: (1) false arrest and false imprisonment under § 1983; (2) denial of equal protection and due process under § 1983; (3) intentional infliction of emotional distress; (4) municipal liability under § 1983 for alleged unconstitutional policies and practices; and (5) negligent hiring, retention, supervision, and training.

LVMPD and Tromba move to dismiss the claims against them on various grounds.  They contend I should dismiss the claims with prejudice because Brown has already amended multiple times.  Brown opposes dismissal.  The parties are familiar with the facts, so I repeat them here

---

[1] Brown also sued the Clark County District Attorney's Office, Danae Adams, Bruce Nelson, and Steve Wolfson in his individual capacity, but he agreed to dismiss his claims against them. ECF No. 104.

only as necessary to resolve the motion.  I grant LVMPD and Tromba's motion, with leave to amend if facts exist to do so.

## I.  ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A.  Section 1983 Claims

For Brown's claims under 42 U.S.C.§ 1983, he must allege that the defendant acted under color of law and the defendant's "action resulted in a deprivation of a constitutional right or a federal statutory right." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).  The defendants do not dispute that they acted under color of law.  Thus, the question is whether Brown has plausibly alleged that the defendants violated his constitutional rights.

Tromba has asserted qualified immunity.  "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the challenged conduct, such that every reasonable official would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (simplified).  I may answer these two questions in any order. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

Brown bears the burden of showing the right at issue was clearly established. *Id.* "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (simplified).  Brown does not necessarily have to point to a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate, such that every reasonable official  . . . would have understood that he was violating a clearly established right." *Morales*, 873 F.3d at 823 (simplified).  And that precedent must be "settled," meaning that "it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby*, 138 S. Ct. at 589-90 (simplified).

Whether the right at issue was clearly established is a question of law for the court. *Morales*, 873 F.3d at 821.  This inquiry is made "in light of the specific context of the case." *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quotation omitted).  Thus, I "must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).  "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* (simplified).

### 1.  False Arrest and False Imprisonment (count one)

Count one alleges that Brown was on lawful bail when Tromba arrested him. ECF No. 44 at 8, 10.  The Third Amended Complaint (TAC) alleges that Tromba stated in a report that he received "notice from my supervision" that Brown's bail was being revoked, "which would violate the court order from District Court #9 stating that his release was with bail and House Arrest." *Id.* at 8.  According to the TAC, Tromba reported that Michael Slyman of Easy Bail

Bonds advised him that Brown was not compliant with bail conditions and was a flight risk who was "going to escape this Friday." *Id.* (internal quotation marks omitted).  Slyman prepared a voluntary statement stating, among other things, that one of the other individuals who posted Brown's bond, Pimkee Rajvongthong, reported to Slyman that Brown had beaten her, but she was too afraid to report it to police. *Id.* at 8-9.  Brown alleges that at the time Tromba arrested him, Easy Bail Bonds had not moved to exonerate the bond and no court had ordered the bond exonerated. *Id.* at 8.  Brown alleges that he thus was on lawful bond. *Id.*  He also alleges that Rajvongthong later stated in an affidavit that she never told Slyman that she wanted off the bond. *Id.* at 9.  According to the TAC, the Nevada Department of Insurance subsequently revoked Easy Bail's license because Slyman caused Brown's early surrender without good cause. *Id.* at 10.

Brown alleges that Tromba "knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan" to arrest Brown "while he was on lawful bond, which had not been exonerated," and without probable cause. *Id.* at 10-11.  He also alleges that after he was arrested, "Defendants" conspired to withhold evidence of his arrest despite his bond being valid and knowingly made false representations to judges to ensure Brown would not be released. *Id.* at 11.

LVMPD and Tromba argue that to the extent this claim is based on alleged false representations, it must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  They also contend that the allegations of misrepresentations and conspiracy are conclusory and improperly lump all defendants together without identifying each defendant's role.  Next, they assert that by Brown's own allegations, Tromba had received credible information to support arresting him and Brown does not allege that Tromba knew the information was incorrect.  Further, they contend that the Nevada state court already determined

1  that Tromba's actions were legally valid, and Brown cannot relitigate that issue here.

2  Alternatively, Tromba asserts qualified immunity.

3       Brown responds that he need not plead with particularity under Rule 9(b) because this

4  claim does not sound in fraud.  Rather, he contends, the TAC alleges the arrest was without

5  probable cause.  Brown argues that he has plausibly alleged that Tromba knowingly and

6  intentionally executed a plan to arrest Brown while he was on bond.  Brown asserts that Tromba

7  based the arrest on the belief that Brown's bond would be revoked in the future, but that Tromba

8  knew the bond had not been revoked at the time of the arrest.  Brown contends that Tromba

9  could not rely on hearsay reported by the bail bondsman without further investigation.  Brown

10 asserts that he is not trying to relitigate the issue because the Nevada court in the criminal case

11 did not address probable cause.  Rather, he contends that the Nevada Department of Insurance

12 determined there was not good cause to revoke Brown's bond and the defendants should not be

13 allowed to relitigate that determination.  Brown argues that he has plausibly alleged that Tromba

14 misrepresented that the bond had been revoked to justify Brown's arrest and altered dates on

15 documents to make it appear that the bond had been revoked prior to the arrest.  Finally, Brown

16 argues that qualified immunity does not apply because it was clearly established that his pretrial

17 release could not be revoked unless there was probable cause that he had violated a condition of

18 release.

19       "A warrantless arrest must be supported by probable cause to comport with the Fourth

20 Amendment." *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d

21 963, 969 (9th Cir. 2010).  "Probable cause exists if the facts and circumstances known to the

22 officer warrant a prudent man in believing that an offense has been committed." *Id.* (simplified).

23 I evaluate "the totality of the circumstances known to the officers" to determine whether there

1   was probable cause for the arrest. *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996)

2   (quotation omitted). "[P]robable cause supports an arrest so long as the arresting officers had

3   probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for

4   the arrest."[2] *United States v. Struckman*, 603 F.3d 731, 741 (9th Cir. 2010) (quotation omitted).

5   "Probable cause to arrest may be based upon hearsay statements." *Butler*, 74 F.3d at 920.

6   To establish probable cause, an officer "may not solely rely on the claim of a citizen witness, but

7   must independently investigate the basis of the witness' knowledge or interview other

8   witnesses." *Struckman*, 603 F.3d at 742 (simplified).  "A sufficient basis of knowledge is

9   established if the [witness] provides facts sufficiently detailed to cause a reasonable person to

10  believe a crime had been committed and the named suspect was the perpetrator." *Peng v. Mei*

11  *Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) (quotation omitted).  An officer is entitled to

12  qualified immunity if he was reasonably mistaken that probable cause to arrest existed. *Krainski*,

13  616 F.3d at 969.

14                                  *a.  Brown's Arrest*

15          Even assuming Tromba lacked probable cause to arrest Brown, Tromba is entitled to

16  qualified immunity.  Based on the allegations in the TAC, Tromba could have reasonably

17  believed that Slyman, as Brown's bail bondsman, would know that Brown was not complying

18  with his bail conditions.  Additionally, Tromba reasonably could believe that Slyman's

19  statements were sufficiently detailed to support either good cause for Slyman to revoke the bond,

20  in which case Brown would not be compliant with his release conditions, or probable cause that

21  Brown was about to flee and had assaulted Rajvongthong.  Brown alleges that Slyman was

22

23

---

[2] Brown's reliance on the fact that the stated reason for his being taken into custody was because the bond was revoked is therefore not dispositive if other grounds supported the arrest.

untruthful because Rajvongthong later denied that she told Slyman she wanted off the bond and because the Nevada Department of Insurance later found Slyman did not have good cause to cause Brown's early surrender.  But Brown does not allege that Tromba knew or should have known that Slyman was untruthful or untrustworthy.  Nor does he allege any facts that would have tipped Tromba off that he should not believe Slyman, who at that time was a licensed bail bondsman.  Moreover, Brown does not point to clearly established law that would put Tromba on notice that he would violate the Fourth Amendment by taking a person on bond into custody where that person's bail bondsman reports that the person is not compliant with the bond conditions and that he heard from a co-signor on the bond that the person is a flight risk and had committed an assault while on bond.

I therefore dismiss this portion of claim one against Tromba.  I also dismiss this claim against LVMPD because, as discussed below with respect to the municipal liability claim, Brown does not allege facts plausibly showing that an LVMPD policy, custom, or practice was the moving force behind any alleged violation.

### b.  Misrepresentations to Judges

Brown asserts judicial misrepresentation claims related to his post-arrest incarceration under both the Fourth Amendment in count one and the Due Process Clause of the Fourteenth Amendment in count two.  The constitutionality of his post-arrest incarceration is governed by the Due Process Clause of the Fourteenth Amendment. *See Tatum v. Moody*, 768 F.3d 806, 815 (9th Cir. 2014).  I therefore dismiss this portion of Brown's claim under the Fourth Amendment.

### 2.  Equal Protection and Due Process (count two)

LVMPD and Tromba move to dismiss this claim, arguing that the allegations are properly governed by the Fourth Amendment because the claim relies on the same conduct as count one

and is redundant of count one.  Alternatively, LVMPD and Tromba argue that the allegations are too conclusory and lump the defendants together, so they do not know what they are alleged to have done as opposed to other defendants.  Finally, they contend that by Brown's own allegations, Tromba had received credible information to support arresting him, and Brown does not allege that Tromba knew the information was incorrect.

Brown responds that he has asserted an equal protection claim that he was treated differently than similarly situated persons on lawful bail.  He also contends that he has alleged a due process violation because he alleges that the police, prosecutors, and witnesses conspired to misrepresent his bail had been revoked when it had not been, to justify his continued detention.

### a. Equal Protection

An "equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotation marks omitted).  To succeed on his class-of-one claim, Brown must plausibly allege that Tromba and LVMPD "(1) intentionally (2) treated [Brown] differently than other similarly situated [persons on bail], (3) without a rational basis." *Gerhart v. Lake Cnty.*, Mont., 637 F.3d 1013, 1021-22 (9th Cir. 2011).

Brown has not plausibly alleged this claim because he fails to allege facts related to any similarly situated individuals or how, given Slyman's statements, Tromba lacked a rational basis to arrest Brown.  I therefore dismiss this claim against Tromba.  I also dismiss this claim against LVMPD because, as discussed below with respect to the municipal liability claim, Brown does not allege facts plausibly showing that an LVMPD policy, custom, or practice was the moving force behind any alleged violation.

8

1                              *b.  Judicial Deception*

2              To state a judicial deception claim, Brown must plausibly allege that (1) the defendant

3    made misrepresentations or omissions material to a judicial decision, and (2) "the

4    misrepresentations or omissions were made intentionally or with reckless disregard for the

5    truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

6              Even under Rule 8's more liberal pleading standard, Brown does not plausibly allege that

7    Tromba (or anyone else) misrepresented facts to judges to keep Brown detained.  Brown's

8    allegation that the "Defendants" made misrepresentations to judges to keep Brown in custody

9    after his initial detention is conclusory and improperly lumps all defendants together so that none

10   know what misrepresentation they were alleged to have made or to whom.  Brown has not

11   plausibly alleged that a misrepresentation was even made because he gives no factual content

12   about what representation was made or why it was false.  Nor does he allege how it caused his

13   continued detention.  And although he alleges the defendants conspired to keep him in custody,

14   that allegation is likewise conclusory.  Brown attempts to give some factual content to this

15   allegation in his opposition to the motion, but I cannot consider those facts because they are not

16   pleaded in the TAC. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  I therefore

17   dismiss this portion of count two against Tromba.  I also dismiss this claim against LVMPD

18   because, as discussed below with respect to the municipal liability claim, Brown does not allege

19   facts plausibly showing that an LVMPD policy, custom, or practice was the moving force behind

20   any alleged violation.

21                    3.  Municipal Liability (count four)

22              LVMPD moves to dismiss this claim because the allegations of the policies or customs

23   are conclusory and lack factual content, there are no allegations of how the policies led to

9

1  Brown's arrest and detention, and Brown relies on a single incident to attempt to show

2  widespread policies or customs.  Brown responds that he has alleged that LVMPD had a policy

3  and custom of not addressing its officers' unlawful conduct, resulting in officers repeatedly

4  violating constitutional rights.  Brown contends he alleges three theories of misconduct that

5  LVMPD condones: (1) refusing to turn over evidence even when ordered by a court to do so;

6  (2) making misrepresentations to courts; and (3) tampering with investigators and witnesses.[3]  He

7  asserts that he has adequately alleged that Tromba made misrepresentations in official documents

8  and that he has alleged multiple instances of several LVMPD officers making misrepresentations

9  and withholding evidence in another case to show a widespread custom.  He also asserts that he

10 has adequately alleged deliberate indifference because he has alleged that Lombardo knew of

11 Tromba's conduct in this case and was aware of an FBI investigation into LVMPD's vice unit

12 but took no action.

13      There is no *respondeat superior* liability under § 1983. *Benavidez v. Cnty. of San Diego*,

14 993 F.3d 1134, 1153 (9th Cir. 2021).  Instead, a municipality may be held liable under § 1983

15 only for constitutional violations resulting from an official policy or custom. *Id.*  This "can

16 include written policies, unwritten customs and practices, failure to train municipal employees on

17 avoiding certain obvious constitutional violations, . . . and, in rare instances, single constitutional

18 violations are so inconsistent with constitutional rights that even such a single instance indicates

19 at least deliberate indifference of the municipality." *Id.* (internal citation omitted).  The policy or

20

21  [3] The TAC also alleges LVMPD condoned its officers' conduct in extorting individuals to give
   up their rights, publicly disclosing the identity of confidential informants, and filing harassing
22  complaints against individuals speaking out against LVMPD. ECF No. 44 at 14-15.  In his
   response to the motion to dismiss, Brown does not address these allegations.  He does not
23  plausibly allege facts to support the allegations, nor does he suggest any plausible means for
   those alleged acts to be the driving force behind his own arrest and detention.

practice must be "the moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quotation omitted).  "In other words, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (en banc) (quotation omitted).

### a. Policy or Practice of Condoning Unlawful Conduct

#### i. Refusing to Turn Over Evidence

Brown has not plausibly alleged a pattern or practice of refusing to turn over evidence, nor does he allege how this alleged practice led to his arrest or continued detention.  Brown identifies only a single case where LVMPD allegedly did not comply with court orders to turn over documents in the Ocean Fleming case. ECF No. 44 at 17.  Brown does not allege in the TAC that LVMPD was ordered to turn over documents in his case and refused to do so or how any alleged custom or practice of refusal to turn over evidence directly led to his arrest or detention.  I therefore dismiss this portion of his municipal liability claim.

#### ii. Misrepresenting Facts to the Courts

Brown contends that he has adequately alleged that Tromba misrepresented facts in official documents to mislead judges into believing that Brown's bail had been revoked before the arrest.  But, as discussed above, Brown has not adequately alleged facts plausibly showing that Tromba made a misrepresentation.  Nor has Brown plausibly alleged facts showing a policy, custom, or practice of making misrepresentations to the court.  Brown relies on allegations that officers in LVMPD's vice unit were corrupt in relation to the Ocean Fleming case and other unidentified cases, but Brown does not identify what misrepresentations those officials made to judges.  Instead, he alleges the officers were in sexual relationships with witnesses and

prosecutors, and coached witness testimony. ECF No. 44 at 15-16.  He therefore has not shown a pattern or practice of LVMPD officers making misrepresentations to judges.  Moreover, Brown does not allege that Tromba was in the vice unit or that the alleged pattern of misrepresentations permeated other officers in the police department beyond the three identified in the TAC such that it was a widespread LVMPD custom.  I therefore dismiss this portion of his municipal liability claim.

### iii.  Tampering with Investigators and Witnesses

Brown does not allege that Tromba tampered with an investigator or witness.  I therefore dismiss this portion of his *Monell* claim.

### b.  Deliberate Indifference

Brown contends that Sheriff Lombardo was LVMPD's primary policy maker and was aware that Judge Tobiasson sought Brown's arrest.  He also argues that Lombardo knew about the FBI investigation into the vice department related to the Ocean Fleming case but took no action.

It is unclear what theory Brown is proceeding under in relation to these allegations, as he mentions ratification, deliberate indifference, and failure to train, but he does not state what applies in this case and does not relate any plausibly alleged facts to these theories.  For example, he does not state what it is that Lombardo knew about Brown's arrest that would suggest a constitutional violation had occurred that Lombardo ratified or what inaction Lombardo's deliberate indifference caused. *See Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (stating that a plaintiff seeking to impose municipal liability based on a policy of deliberate inaction must show a municipal policy that "amounts to deliberate indifference to the plaintiff's constitutional right" and that the policy was the "moving force behind the constitutional violation"

(simplified)); *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (stating that for ratification, a policymaker must "approve a subordinate's decision and the basis for it before the policymaker will be deemed to have ratified the subordinate's discretionary decision" (emphasis omitted)).

By Brown's own allegations, Lombardo learned about Judge Tobiasson's alleged desire to have Brown arrested after Tromba had already arrested Brown. ECF No. 44 at 8-9.  Brown does not allege facts to plausibly show that Lombardo had reason to know or suspect that there was anything wrong with Brown's arrest or that he approved the arrest and the basis for it.  Nor does he identify what inaction was deliberately indifferent to his rights or how that policy of inaction was the moving force behind any constitutional violation.  Finally, he does not allege any facts related to the deficient hiring, training, or supervision of Tromba or how that deficiency led to his arrest and continued detention. *See Benavidez*, 993 F.3d at 1153-54 (stating that to allege a failure to train, "a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees").  I therefore dismiss this portion of the *Monell* claim.

**B.  State Law Claims**

1.  Intentional Infliction of Emotional Distress (count three)

LVMPD and Tromba argue this claim fails because the alleged conduct is not extreme and outrageous.  They contend that the only factual allegations are that Tromba arrested Brown without probable cause and while Brown's bond was still valid.  They assert that by Brown's own allegations, Tromba had a basis to think, even if mistakenly, that he had a basis to arrest

1    Brown.  Brown responds that he has adequately alleged extreme and outrageous behavior

2    because he alleges that Tromba arrested him without probable cause and made intentional

3    misrepresentations in official documents.

4         To state a claim for intentional infliction of emotional distress, Brown must allege that

5    (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or

6    reckless disregard for, causing emotional distress," (2) Brown "suffered severe or extreme

7    emotional distress," and (3) causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886

8    (Nev. 1999) (en banc).  Outrageous conduct is behavior that goes "outside all possible bounds of

9    decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency*

10   *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

11        The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as

12   relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023,

13   1026-27 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980).  The comments to

14   the Restatement offer examples of when a police officer's conduct may be so outrageous as to

15   support an IIED claim.  Some examples include where the officer attempts to extort money by a

16   threat of arrest, attempts to extort a confession by falsely telling the accused her child has been

17   injured in an accident and she cannot go to the hospital until she confesses, or otherwise engages

18   in an "extreme abuse" of his position.  "The Court determines whether the defendant's conduct

19   may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable

20   people may differ, the jury determines whether the conduct was extreme and outrageous enough

21   to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

22        Even taking Brown's allegations as true, he has not plausibly alleged extreme and

23   outrageous conduct.  The allegation that Tromba arrested Brown without probable cause, without

14

1  more, is not an extreme abuse of police power.  Further, as discussed above, Brown has not

2  plausibly alleged that Tromba intentionally or recklessly made a false representation to secure

3  Brown's continued detention.  I therefore dismiss this claim.

4                    2.   Negligent Hiring, Retention, Supervision, and Training (count five)

5         LVMPD and Tromba argue that they are entitled to discretionary immunity under Nevada

6  Revised Statutes (NRS) § 41.032(2) for this claim.  They contend that there are no factual

7  allegations to support bad faith in hiring, retention, supervision, or training that might deprive

8  them of discretionary immunity.  Finally, they assert there are no plausibly alleged facts to

9  support this claim.  Brown responds that these types of claims are not necessarily subject to

10  discretionary immunity because it is not discretionary to train and supervise officers on whether

11  they can arrest without probable cause or make false statements of fact in official records.

12         Decisions about how to properly train and supervise officers are entitled to discretionary

13  immunity because they involve individual judgment on the part of the policymakers or

14  supervisors and are based on considerations of social, economic, or political policy. *Paulos v.*

15  *FCH1, LLC*, 136 Nev. 18, 456 P.3d 589, 595 (Nev. 2020) (en banc) (holding that a police

16  department's hiring and training decisions are subject to discretionary immunity).  Brown

17  contends that I should follow *Chiles v. Underhill*, which held that "the supervision and training

18  of employees is not a discretionary act" subject to discretionary immunity. Case No. 3:05-cv-

19  00179-LRH-RAM, 2006 WL 383521, at *8 (D. Nev. Feb. 17, 2006).  I decline to do so because

20  that decision predates *Paulos*, and because "the great weight of authority in this district holds

21  that discretionary immunity applies to decisions relating to the hiring, training, and supervision

22  of employees." *Gardner v. City of Las Vegas*, No. 2:16-cv-01384-GMN-CWH, 2017 WL

23  3087276, at *4 (D. Nev. July 20, 2017).  I therefore dismiss this claim with prejudice.

### C. Sheriff Lombardo

LVMPD argues that naming Sheriff Lombardo in his official capacity is redundant to suing LVMPD and that to the extent count one is meant to be against Lombardo in his individual capacity, there are no allegations that he personally participated in the alleged violation.  Counsel for LVMPD has not entered an appearance for Lombardo and identify themselves as counsel for LVMPD and Tromba only.  I therefore do not address any arguments regarding Lombardo.

### D. Amendment

Under Rule 15(a)(2), I "should freely give leave when justice so requires."  I consider five factors to assess whether to grant leave to amend under Rule 15(a): (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F. 3d 1109, 1117 (9th Cir. 2013).  Whether to grant leave to amend under Rule 15 lies within my discretion. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  My discretion to deny leave to amend "is particularly broad where [the] plaintiff has previously amended the complaint" unsuccessfully. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1159 (9th Cir. 1989).

Although Brown has made multiple attempts to amend, I will grant him one final opportunity to plausibly allege the claims I have dismissed (except his state law claim for negligent hiring, retention, supervision, and training), if facts exist to do so.  Brown is advised to support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  When claims are alleged against multiple defendants, the complaint should clearly indicate which claims apply to which

defendant. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  A defendant should be able to read the complaint and understand "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Id.*  Brown thus should identify each defendant and support each claim with factual allegations about each defendant's actions.  Where multiple claims are alleged, the complaint should identify which factual allegations give rise to each claim.  Exhibits are not a substitute for a proper complaint.  Instead, Brown should summarize the information he believes to be relevant as part of the supporting facts for each claim asserted. Brown must allege enough facts, not conclusions, to support each claim.  **Brown may not assert any new claims or add any new parties in his fourth amended complaint.**

## II.  CONCLUSION

I THEREFORE ORDER that defendants Las Vegas Metropolitan Police Department and Dante Tromba's motion to dismiss **(ECF No. 101) is GRANTED**.

I FURTHER ORDER that plaintiff Marlon Brown may file a fourth amended complaint consistent with this order.  Failure to file a fourth amended complaint by December 9, 2022 will result in dismissal of all claims against defendants Las Vegas Metropolitan Police Department and Dante Tromba with prejudice.

DATED this 14th day of November, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE