# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARLON LORENZO BROWN,

    Plaintiff

v.

DANTE TROMBA, et. al.,

    Defendants

Case No.: 2:17-cv-02396-APG-BNW

**Order (1) Granting in Part Motion for Sanctions and (2) Granting in Part Motion to Dismiss**

[ECF Nos. 116, 124]

Plaintiff Marlon Lorenzo Brown sues the Las Vegas Metropolitan Police Department (LVMPD) and Dante Tromba under 42 U.S.C. § 1983 and Nevada law for alleged violations arising out of Brown's arrest while on bond.[1]  The operative complaint is Brown's fourth amended complaint (FAC). ECF No. 114.  Brown asserts claims for: (1) false arrest and false imprisonment under § 1983; (2) denial of equal protection and due process under § 1983; and (3) intentional infliction of emotional distress.

LVMPD and Tromba move for sanctions under Federal Rule of Civil Procedure 11 for what they contend are false allegations in the FAC.  LVMPD and Tromba also move to dismiss the claims against them on various grounds.  They contend I should dismiss with prejudice because Brown has already amended multiple times.  Brown opposes sanctions and dismissal.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion.  I grant in part the motions for sanctions and to dismiss.

/ / / /

/ / / /

---

[1] LVMPD and Tromba are the only defendants named in the fourth amended complaint.

## I.  MOTION FOR SANCTIONS (ECF No. 124)

LVMPD and Tromba move for Rule 11 sanctions against Brown and his counsel based on the following allegations in the FAC:

(1) Tromba-forward dated the Temporary Custody Report (TCR) to the date and time of 11:00 a.m. on October 4, 2016 so that it would appear as if Brown was arrested that day instead of the day before;

(2) Tromba misrepresented in a House Arrest Briefing Memo that he "received notice from his supervision that Brown was having his bail revoked;" and

(3) Tromba and other unidentified LVMPD officers fraudulently forward-dated all of Brown's custody records to misrepresent the timelines of events leading to Brown's arrest.

They also take issue with a statement in Brown's response to the motion to dismiss in which Brown suggested that Tromba may have "affix[ed]" bail bondsman Michael Slyman's signature on the TCR. ECF No. 119 at 22.  LVMPD and Tromba contend that Brown and his counsel did not have a good faith basis in evidence to make any of these allegations where (1) Slyman testified in another proceeding that he prepared the TCR and Brown and his counsel had that testimony before filing the FAC; (2) the Briefing Memo lists another officer as the author; (3) Brown and his counsel had numerous records showing Brown was returned to custody on October 3; and (4) there is no evidentiary basis to accuse Tromba of forging Slyman's signature on the TCR.  They request that I strike the allegations and award attorney's fees and costs incurred in filing the sanctions motion.

Brown and his counsel respond that the defendants' motion is untimely because the FAC is not the first time that Brown made these allegations, yet the defendants did not previously

move for sanctions.  Alternatively, they contend that the defendants have previously identified Tromba as the author of the Briefing Memo and, even if Tromba did not actually write it, he is the source of the false statement that Brown's bail was being revoked.  As for the TCR, Brown and his counsel argue that the defendants' counsel cannot base their motion on their own evaluation of the handwriting on the TCR.  They contend that it is possible that someone else filled out the TCR and Slyman merely signed it.  Brown and his counsel argue that their point is not that Tromba forged Slyman's signature, but that Tromba filled out the TCR or assisted in filling it out.  They argue that discovery is needed to prove or disprove Tromba's role in preparing the TCR.  Finally, they assert that the defendants cannot rely on Tromba's declaration attached to the sanctions motion because they did not have that declaration when they made the allegations.

In reply, the defendants argue the motion is timely because they filed it within a reasonable time after Brown filed the FAC and before I ruled on the motion to dismiss.  They also argue that I can consider Tromba's declaration because it was attached to the Rule 11 motion they served on Brown and his counsel before filing it with the court, yet Brown and his counsel did not meet and confer with them and did not retract the allegations.

Under Rule 11(b)(3), attorneys and parties filing papers with the court "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Failure to comply with Rule 11(b)(3) may result in sanctions. Fed. R. Civ. P. 11(c).  Before filing a motion for Rule 11 sanctions, the moving party must give the other party or attorney 21 days' notice to withdraw or correct the allegedly offending document.

Fed. R. Civ. P. 11(c)(2).  If the offending document is not withdrawn or corrected, then the moving party may file the motion with the court. *Id.*

If I find that Rule 11 was violated, I may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).  I may award reasonable attorney's fees incurred in filing the motion to the prevailing party if "warranted." Fed. R. Civ. P. 11(c)(2).  Additionally, I may impose nonmonetary sanctions or a penalty payable to the court. Fed. R. Civ. P 11(c)(4).  In selecting the appropriate sanction, I must limit it "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.*

### A.  Timeliness

Rule 11 does not contain a requirement that a motion be filed by a particular time.  But "[o]rdinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." *Holgate v. Baldwin*, 425 F.3d 671, 679 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends.).  Given the 21-day safe harbor provision, "a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)" because it would deprive the nonmoving party of the opportunity to withdraw or correct it. Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends.

The defendants sent Brown and his counsel the draft sanctions motion to trigger the 21-day safe harbor period approximately two months after Brown filed the FAC. ECF No. 124-1. They filed the motion one month later, after the safe harbor period expired and before I ruled on the motion to dismiss the FAC. ECF No. 124.  Brown nevertheless argues that the motion is

1   untimely because he made similar allegations in the consolidated case in 2020 and no sanctions

2   motion came from that.

3          During summary judgment briefing in the consolidated case, Brown made similar

4   arguments about LVMPD fraudulently forward-dating the TCR, to which the defendants replied

5   without pursuing sanctions. *See* 2:19-cv-01350-APG-BNW, ECF Nos. 55 at 3-4, 10-11, 13-14;

6   56 at 6, 9-13.  Four months after summary judgment briefing was complete, I granted Brown's

7   motion to consolidate the two cases and allowed the defendants to decide whether they wanted to

8   withdraw the motion for summary judgment in the consolidated case. 2:19-cv-01350-APG-

9   BNW, ECF No. 57.  The defendants agreed to withdraw the motion that generated the briefing

10  that Brown now argues should have triggered an earlier Rule 11 motion. ECF No. 84.

11         I thereafter gave Brown leave to amend, making the third amended complaint the

12  operative complaint. ECF No. 96.  That complaint did not allege that Tromba fraudulently dated

13  documents and made only conclusory allegations that "Defendants" misrepresented unidentified

14  facts to the state court. ECF No. 44 at 11-12.  The defendants thus did not have grounds to make

15  the Rule 11 motion based on these allegations at that time.  Once Brown filed the FAC, however,

16  the defendants timely gave Brown and his counsel the 21-day safe harbor notice.  The fact that

17  the defendants could have filed a sanctions motion earlier and chose not to does not give Brown

18  and his counsel a free pass on putting objectively baseless allegations in the FAC.  Indeed, the

19  prior briefing should have made Brown and his counsel more careful in making these allegations.

20  The motion is timely, and I will consider it on the merits.

21      **B.  Merits**

22         "When, as here, a complaint is the primary focus of Rule 11 proceedings, a district court

23  must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually

baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and

competent inquiry before signing and filing it." *Holgate*, 425 F.3d at 676 (quotation omitted).

"The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after

conducting an objectively reasonable inquiry into the facts and law, would have found the

complaint to be well-founded." *Id.* at 677.

### 1.  TCR

The FAC alleges that the TCR "was forward dated by Tromba and the LVMPD [to]

misrepresent that Plaintiff was taken into custody on October 4, 2016, and that Plaintiff was

arrested at 11:00 am." ECF No. 114 at 8.  Additionally, in Brown's opposition to the motion to

dismiss, Brown stated that "Tromba has not testified that he did not simply affix Slyman's name

to the TCR after forward dating it." ECF No. 119 at 22.

The defendants argue that Brown had no good faith basis in evidence to make these

assertions because the TCR shows Slyman filled it out and signed it, the handwriting on the TCR

is similar to handwriting on other documents indisputably prepared and signed by Slyman, and

there is no evidence that Tromba forged Slyman's signature.  The defendants contend that Brown

and his counsel knew that Slyman prepared the TCR because Slyman testified in a prior

proceeding that he did.  Additionally, the defendants attached to the sanctions motion Tromba's

declaration in which he denies that he prepared the TCR or filled out any information on it, or

that he signed it as Slyman.  The defendants contend that Brown and his counsel did not respond

to the safe harbor notice, did not confer with them regarding these allegations despite having the

opportunity to review Tromba's affidavit, and did not amend or withdraw the allegation.

Brown and his counsel respond that Slyman has previously stated that Tromba directed

him how to fill out a voluntary statement, so it is not baseless to allege that Tromba also directed

Slyman how to fill out the TCR or filled it out for his signature. They contend that sanctions cannot be based on the defendants' own handwriting analysis because they are not handwriting experts. As to the allegation regarding Tromba affixing Slyman's signature, Brown and his counsel assert they were not contending that Tromba forged Slyman's signature. Rather, they were arguing that the defendants were attempting to obtain dismissal based on facts outside the pleadings and for which discovery is needed. They also argue that Slyman's testimony that he filled out the TCR is inconclusive about what role Tromba played in the document's preparation. Finally, they contend that Tromba was supposed to prepare a TCR on October 3 under applicable regulations and LVMPD's policies but did not do so, thus further suggesting that he had a hand in preparing the October 4 TCR, as it is the only TCR prepared in relation to Brown being taken back into custody.

The TCR states that the date and time of the arrest is 11:00 a.m. on October 4, 2016. ECF No. 124-2 at 2. It identifies the location as the Clark County Detention Center. *Id.* The form asks whether the arrest is a citizen arrest, and the "N" is circled but crossed out and "Y" is circled and not crossed out. *Id.* at 3. There are two places where Slyman was to sign as the "arresting officer." *Id.* at 2-3. The signatures on page 1 do not match the signature on page 2. *Id.* Accordingly, it is not apparent from the face of the TCR that Slyman is the only person who filled it out or signed it. In his declaration attached to the sanctions motion, Tromba denies that he filled out any portion of the TCR and states he did not write Slyman's name or signature on it. ECF No. 124-5 at 5.

On the same day the TCR was prepared, Slyman also filled out a voluntary statement. ECF No. 124-3 at 4. In that statement, Slyman wrote "I am seeking help in revoking Marlon Brown[']s bail bond." *Id.* Slyman stated in a 2020 declaration that Tromba told him to write that

1  sentence. ECF No. 125-5 at 3.  In a declaration attached to the sanctions motion, Tromba denies

2  that he told Slyman what to write. ECF No. 124-5 at 4-5.

3         At a hearing before the Division of Insurance, Slyman testified that he "did a TCR, which

4  is a temporary custody report, and it's an in-custody bond surrender." ECF No. 124-4 at 6; *see*

5  *also id.* at 8 (stating "I did the TCR").  Neither side has pointed to evidence that Slyman was

6  asked what he meant by doing a TCR, whether he filled out the entire document himself, whether

7  anyone told him what to write, or why the signatures on the two pages do not match.

8         The allegation that Tromba forward-dated the TCR is not objectively baseless.  It is not

9  clear who filled out each section of the form or whether Tromba directed Slyman to fill it out a

10 certain way.  Although Tromba denies telling Slyman how to fill out any form, Slyman has

11 stated under oath that Tromba told him what to put on the voluntary statement filled out at the

12 same time.  It is not objectively baseless to allege Tromba also had a hand in either preparing the

13 TCR or telling Slyman what to put.

14        Likewise, the statement in the response brief that Tromba "affixed" Slyman's signature is

15 not objectively baseless.  First, Brown's counsel explains that this statement was attorney

16 argument based on the uncertainty surrounding the TCR's preparation and how discovery was

17 needed to ascertain the facts.  Moreover, there is a clear mismatch in signatures between the two

18 pages of the TCR, and it is undisputed that Tromba was the person with whom Slyman

19 interacted.  Perhaps there is some other explanation, but the defendants have not pointed to any

20 evidence to explain the discrepancy or shown that Brown and his counsel had access to such

21 evidence.  Tromba's declaration does not solve it because there is a dispute between his

22 statements under oath and Slyman's about their interactions on October 4: Slyman states that

23 Tromba told him what to put in the voluntary statement, and Tromba denies that.  I have no basis

8

1  to determine that Slyman's statement is so lacking in credibility that relying on it is sanctionable.

2  I therefore deny the motion for sanctions on this basis.

3                    2.  Briefing Memo

4          The FAC alleges that in the Briefing Memo, also referred to as the House Arrest Report,

5  Tromba misrepresented "that he had received notice from his supervision that Brown was having

6  his bail revoked." ECF No. 114 at 7.  The defendants argue that this allegation is false because it

7  can be determined from the face of the memo that the author is Officer Mailloux.  They also

8  contend that Brown and his counsel had testimony from John Parnell, an investigator with the

9  Nevada Division of Insurance, stating that Mailloux prepared the memo.  Additionally, the

10 defendants identified Mailloux as the author in the motion to dismiss.  They thus contend that

11 Brown had no basis to allege that Tromba misrepresented that he received notice "from his

12 supervision." ECF No. 124 at 10.

13         Brown and his counsel respond that the defendants have previously identified Tromba as

14 the author of the Briefing Memo.  They also contend that it is not clear from the face of the

15 memo who is the author and Parnell's testimony does not establish who authored it.

16 Alternatively, Brown and his counsel argue that regardless of who authored the memo, there is

17 no dispute that Tromba is the source of the statement in the memo that Brown's bail was being

18 revoked, and that is the substance of the alleged misrepresentation because Slyman did not tell

19 Tromba that Brown's bond was being revoked.

20         The Briefing Memo does not have a field specifically denoting who is its author. ECF

21 No. 124-5 at 7.  It has a section titled "Brief," which lists "Sgt Tromba." *Id.*  It also has a section

22

23

titled "Officers Name/P#," which lists "B Mailloux #12843."[2] *Id.* at 8.  Although these sections

do not make clear which of these officers is the author, the context of the memo makes it plain.

The Report section of the memo starts by stating, "[o]n 10/3/2016 at approximately 1400 hours, I

received notice from my supervision that Marlon Brown was having his bail revoked which

would violate the court order from District Court #9 stating that his release was with bail and

House Arrest." *Id.* at 7.  At the end of that section, it states "Brown was remanded on 10/03/2016

at his residence without incidence [sic] by Sgt. Tromba, Officers Hamm, Keiser, Crunden and

myself." *Id.*  Based on this sentence, Tromba is not the author because the author refers to Sgt.

Tromba by name and identifies himself or herself as "myself."  Alleging that Tromba wrote that

he received "notice from his supervision" thus is objectively baseless.

However, the defendants have sometimes referred to the memo in ways that suggest

Tromba was the author. *See* ECF No. 125-2 at 9, 15; 2:19-cv-01350-APG-BNW, ECF No. 56 at

16.  Additionally, there does not appear to be any dispute that Tromba is the one who spoke to

Slyman on October 3 and thus is the source of the statement that "Brown was having his bail

revoked."[3]  Indeed, the defendants supported this characterization of the memo in other briefing.

*See* 2:19-cv-01350-APG-BNW, ECF No. 54 at 2.  Accordingly, I will strike the allegation that

Tromba received "notice from his supervision," but I will not strike the allegation that Tromba

stated that "Brown was having his bail revoked."  Given the defendants' own conduct in

sometimes attributing or appearing to attribute the memo to Tromba, I decline to award any other

sanctions.

---

[2] Parnell's testimony does not establish that Mailloux is the author.  Parnell was asked if Mailloux was listed at the end of the memo, and he agreed. ECF No. 124-7 at 12.  He did not state that Mailloux was the author nor is it clear he had personal knowledge as to who wrote it.

[3] Slyman denied that he told Tromba that he had revoked or was going to revoke the bond. *See* ECF No. 125-5 at 2-3.

1          3.  All Custody Records

2          The FAC alleges that "TROMBA and other unknown LVMPD officers then fraudulently

3   forward dated all of Brown's custody records to misrepresent the timeline of events leading to

4   Brown's arrest, making it appear from said documents that Slyman had requested assistance

5   from the LVMPD to revoke Brown's bond first, and Brown was subsequently arrested by

6   TROMBA after the request for assistance TROMBA instructed Slyman to put into the second

7   voluntary statement." ECF No. 114 at 16.  The defendants argue that multiple custody records

8   show the date Brown was returned to custody was October 3 and that Brown and his counsel had

9   these documents both before and during the safe harbor period.  Brown and his counsel do not

10  respond to this portion of the defendants' motion.

11         I grant this portion of the motion because the defendants have identified multiple custody

12  records that show Brown was taken into custody on October 3. ECF Nos. 124-8 through 124-12.

13  It therefore was objectively baseless to state that "all" of Brown's custody records were forward

14  dated.  Brown and his counsel do not dispute the defendants' assertion that Brown received all

15  these records in initial disclosures, and they were attached to the safe harbor notice.  Brown and

16  his counsel thus did not conduct a reasonable investigation into this allegation, did not confer

17  with the defendants' counsel over this allegation after receiving the safe harbor notice, and did

18  not withdraw or correct it.  Thus, I strike the allegation from the FAC.

19         I also admonish and sanction Brown's counsel[4] (but not Brown) $500 payable to the

20  defendants for making this objectively false allegation, refusing to respond after receiving the

21

22  [4] I sanction both of Brown's attorneys because both are listed as representing Brown on the FAC
    and the safe harbor notice was sent to both. *See* ECF Nos. 114; 124-1 at 2.  I note that only

23  Michael MacovoyAmaya responded to the motion for sanctions. ECF No. 125.  However, the
    sanction is based on the allegation in the FAC and the failure to respond to the safe harbor notice
    or correct the allegation, not what was stated in the response.

safe harbor notice, and then not withdrawing or correcting it.  Had Brown's counsel responded to
the safe harbor notice, it is possible, perhaps even likely, the parties would have resolved or
narrowed their disputes regarding this and other allegations.  This would have saved the parties'
and the court's resources.  I sanction counsel and not Brown because counsel, not Brown
individually, should have responded to the safe harbor notice either by stating his position or by
withdrawing or correcting the false allegation.  I deny the defendants' request for additional fees
because they did not entirely prevail on the motion and because a $500 sanction is sufficient to
deter Brown's counsel and others similarly situated from repeating the conduct.

## II.  MOTION TO DISMISS (ECF No. 116)

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as
true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.
SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of
legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation
v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient
factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a
formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A.  Section 1983 Claims

For Brown's claims under 42 U.S.C.§ 1983, he must allege that the defendant acted under
color of law and the defendant's "action resulted in a deprivation of a constitutional right or a
federal statutory right." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).  Tromba and
LVMPD do not dispute that they acted under color of law.  Thus, the question is whether Brown
has plausibly alleged that the defendants violated his constitutional rights.

Tromba has asserted qualified immunity.  "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the challenged conduct, such that every reasonable official would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (simplified).  I may answer these two questions in any order. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

Brown bears the burden of showing the right at issue was clearly established. *Id.* "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (simplified).  Brown does not necessarily have to point to a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate, such that every reasonable official  . . . would have understood that he was violating a clearly established right." *Morales*, 873 F.3d at 823 (simplified).  And that precedent must be "settled," meaning that "it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby*, 583 U.S. at 63 (simplified).

Whether the right at issue was clearly established is a question of law for the court. *Morales*, 873 F.3d at 821.  This inquiry is made "in light of the specific context of the case." *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quotation and emphasis omitted).  Thus, I "must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (quotation omitted).  "A rule is too general if the

1   unlawfulness of the officer's conduct does not follow immediately from the conclusion that the

2   rule was firmly established." *Id.* at 64 (simplified).

3         1.  LVMPD

4         LVMPD argues that there are no allegations to support municipal liability under § 1983.

5   Brown does not respond.  He therefore consents to this part of the motion being granted.  LR 7-

6   2(d).  Moreover, the FAC does not allege facts that would support LVMPD's liability as an

7   entity under § 1983. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

8   Consequently, I grant the motion and dismiss LVMPD from the § 1983 claims.  Because Brown

9   has had multiple opportunities to amend, I dismiss these claims against LVMPD with prejudice.

10  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

11        2.  False Arrest and False Imprisonment

12        Tromba argues this claim fails because even taking the FAC's allegations as true, he had

13  probable cause to take Brown into custody and, even if he did not, he is entitled to qualified

14  immunity.  Brown responds that Tromba did not have probable cause because violating bail

15  conditions is not a crime for which Tromba could arrest Brown and Tromba did not investigate

16  beyond Slyman's statements to support probable cause for any other crime.  Brown also

17  contends that Nevada law on how a bond can be revoked is clearly established.

18        Even assuming Tromba lacked probable cause to arrest Brown, Tromba is entitled to

19  qualified immunity.  Brown does not point to clearly established law that would put Tromba on

20  notice that he would violate the Fourth Amendment by returning a person on bond to custody

21  where that person's bail bondsman reports that the person is not compliant with the bond

22  conditions and that the bondsman heard from a co-signor on the bond that the person is a flight

23  risk, had assaulted the co-signor, and the co-signor wanted off the bond.  Brown does not point to

14

1  clearly established law that probable cause is even the correct standard under these

2  circumstances, much less that any reasonable officer under similar circumstances would

3  understand that returning Brown to custody violated the Fourth Amendment.  Brown's reliance

4  on Nevada statutes as a source for clearly established law on the Fourth Amendment is

5  misplaced. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (stating that violations

6  of "state departmental regulations do not establish a federal constitutional violation" (emphasis

7  omitted)); *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001) ("Whether the

8  deputies violated a state law or an internal departmental policy is not the focus of our inquiry.

9  . . .  Rather, our focus is on whether a reasonable officer would have known that the deputies'

10  conduct violated Case's federal statutory or constitutional rights rather than merely a state law or

11  policy provision.").  I therefore dismiss this claim against Tromba with prejudice because

12  amendment would be futile and because Brown has had numerous prior opportunities to amend.

13  *See Salameh*, 726 F.3d at 1133.

14                              3.  Judicial Deception

15           Tromba argues that a judicial deception claim fails because the documents on which

16  Brown's claim relies do not show that Tromba forward-dated anything.  Specifically, Tromba

17  contends that he did not author the TCR, Slyman did.  Tromba also argues that the Officer's

18  Notes and Incident History accurately reflect the information available at the time based on

19  Slyman's TCR prepared on October 4.  Tromba further contends that he had probable cause to

20  arrest Brown on October 3 regardless of these documents.  Finally, Tromba argues that this claim

21  is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because it effectively challenges Brown's

22  pretrial detention without alleging that Brown obtained a court decision invalidating the pretrial

23  detention.

1       Brown responds that Tromba is improperly relying on facts outside the record to argue

2 about who prepared which documents and why documents were dated the way they were.  He

3 also contends this claim is not barred by *Heck* because he does not challenge a conviction or

4 sentence and nothing about his allegations calls into question a conviction or sentence.  Rather,

5 he argues, he is challenging his temporary pretrial detention after that detention concluded.

6                   *a.  Heck*

7       Under *Heck*, a plaintiff "cannot recover damages in a § 1983 suit if a judgment in favor

8 of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless

9 the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'"

10 *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (quoting *Heck*, 512 U.S. at 487).  Brown's

11 allegations that Tromba falsified documents to fool the state court into keeping Brown in custody

12 would necessarily imply the invalidity of pretrial detention and Brown has not alleged that his

13 pretrial detention has been invalidated.

14       However, Tromba has not addressed whether an exception applies given that Brown was

15 released from pretrial detention and potentially could no longer challenge it through a habeas

16 corpus petition.  It is not clear from the parties' briefs whether Brown was subsequently

17 convicted on the charges related to his pretrial detention and, if so, whether his pretrial detention

18 had any impact on the calculation of his sentence.  Absent further factual development, it is not

19 clear that Brown's challenge would necessarily imply the invalidity of any conviction or

20 sentence because he challenges only the temporary continuation of his pretrial detention after

21 that period of custody ended, nor is it apparent that habeas corpus is or was an available avenue

22 for relief. *See Galanti v. Nev. Dep't of Corr.*, 65 F.4th 1152, 1153-56 (9th Cir. 2023); *Nonnette v.*

23

1  *Small*, 316 F.3d 872, 875-77 (9th Cir. 2002).  I therefore decline to address whether this claim is

2  *Heck*-barred absent further evidence and argument.

3           *b.  Failure to State a Claim*

4        The constitutionality of Brown's post-arrest incarceration is governed by the Due Process

5  Clause of the Fourteenth Amendment. *See Tatum v. Moody*, 768 F.3d 806, 815 (9th Cir. 2014).

6  To state a judicial deception claim, Brown must plausibly allege that (1) the defendant made

7  misrepresentations or omissions material to a judicial decision, and (2) "the misrepresentations

8  or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of*

9  *Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

10        Viewing the allegations and reasonable inferences in Brown's favor, he has plausibly

11  alleged that Tromba-forward dated the TCR to make it appear that Brown was not arrested until

12  after Slyman filed the voluntary statement on October 4 asking for help in revoking Brown's

13  bond. ECF No. 114 at 8.  Although Tromba's argument that he did not prepare the TCR

14  contradicts the FAC's allegations, at this stage of the proceedings I must accept as true the

15  FAC's allegations.  Brown plausibly alleges Tromba's conduct was intentional because Tromba

16  knew that Brown's bond had not been revoked the day before when Tromba took Brown into

17  custody. *Id.* at 5, 11.  And he plausibly alleges that the TCR was provided to the state court and

18  the state court relied on it to continue Brown's pretrial detention. *Id.* at 8, 12-13, 15-16.

19        Tromba argues that even disregarding the alleged false statements, he had probable cause

20  to arrest Brown.  But this claim is directed at Tromba's post-arrest conduct, and Brown alleges

21  the state court's decision to continue Brown's detention (rather than judicial authorization of the

22  arrest in the first place) was based on the false representation that Slyman had requested

23

1  assistance in revoking the bond before Brown was taken into custody.  Because Brown has

2  plausibly alleged a judicial deception claim, I deny the motion to dismiss this claim.[5]

3                  4.  Equal Protection

4        Tromba argues that this claim fails because the FAC defines who is similarly situated to

5  Brown too broadly and because Tromba had a rational basis to take Brown into custody.  Brown

6  responds that he has adequately identified a group of similarly situated comparators as all other

7  pretrial detainees who were released on bail, followed the bail conditions, and did not commit

8  new crimes.

9        An "equal protection claim can in some circumstances be sustained even if the plaintiff

10  has not alleged class-based discrimination, but instead claims that she has been irrationally

11  singled out as a so-called class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601

12  (2008) (internal quotation marks omitted).  To succeed on his class-of-one claim, Brown must

13  plausibly allege that Tromba and LVMPD "(1) intentionally (2) treated [Brown] differently than

14  other similarly situated [persons on bail], (3) without a rational basis." *Gerhart v. Lake County,*

15  *Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  A "class-of-one plaintiff must be similarly situated

16  to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th

17  1110, 1123 (9th Cir. 2022).

18        Brown alleges he was treated differently than "all other similarly situated individuals on

19  pretrial bail bond in Clark County, who are released and allowed to remain on bail so long as

20  they remain compliant with the conditions set by the state court for their bail, do not commit any

21  new crimes, and have not had their bail revoked." ECF No. 114 at 16.  But this comparator class

22

23

---

[5] Tromba does not argue he is entitled to qualified immunity on this claim, so I do not address that issue.

1  is not similarly situated in all material respects because it does not include individuals whose bail

2  bondsman reported issues suggesting the individual was not compliant with the bond, may have

3  committed another crime, and may be contemplating flight from the jurisdiction, or similar

4  assertions.  I therefore dismiss this claim against Tromba with prejudice because Brown has had

5  multiple opportunities to amend. *Salameh*, 726 F.3d at 1133.

6  **B.  Intentional Infliction of Emotional Distress**

7  Tromba and LVMPD argue that this claim fails because an arrest without probable cause

8  is not extreme and outrageous.  Additionally, they argue that Brown does not plausibly allege

9  that Tromba made a false representation to a court to ensure Brown remained in pretrial

10  detention.  Finally, they argue that Tromba asking Slyman to prepare a second voluntary

11  statement is not extreme and outrageous.

12  Brown responds that he has plausibly alleged that Tromba intentionally forward-dated

13  documents to secure Brown's pretrial detention and cover Tromba's misconduct in arresting

14  Brown without probable cause.  Brown asserts that Tromba is relying on facts outside the record

15  about who created which document to obtain dismissal before these facts can be tested through

16  discovery.

17  To state a claim for intentional infliction of emotional distress, Brown must allege that

18  (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or

19  reckless disregard for, causing emotional distress," (2) Brown "suffered severe or extreme

20  emotional distress," and (3) causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886

21  (Nev. 1999) (en banc).  Outrageous conduct is behavior that goes "outside all possible bounds of

22  decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency*

23  *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1026-27 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). The comments to the Restatement offer examples of when a police officer's conduct may be so outrageous as to support an IIED claim. Some examples include where the officer attempts to extort money by a threat of arrest, attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses, or otherwise engages in an "extreme abuse" of his position. "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

As I stated in my prior order, the allegation that Tromba arrested Brown without probable cause, without more, is not an extreme abuse of police power. ECF No. 112 at 14-15. However, reasonable people could differ about whether falsifying official documents to make it appear the arrest occurred only after Slyman's request for help in revoking the bond, which a state court then relied on to support Brown's continued pretrial detention, is extreme and outrageous. I therefore deny the defendants' motion to dismiss this claim.

## III.  CONCLUSION

I THEREFORE ORDER that the defendants' motion for sanctions **(ECF No. 124) is GRANTED in part**. Plaintiff Marlon Brown's counsel, Michael J. McAvoy Amaya and Timothy E. Revero, are sanctioned $500, jointly and severally, payable to the defendants. Counsel for the respective parties will confer about how to accomplish payment, which must be made by September 26, 2023.

20

I FURTHER ORDER that the defendants' motion to dismiss **(ECF No. 116) is**

**GRANTED in part**.  The remaining claims are (1) judicial deception against defendant Dante

Tromba under 42 U.S.C. § 1983 and (2) intentional infliction of emotional distress against

defendants Dante Tromba and Las Vegas Metropolitan Police Department.

DATED this 23rd day of August, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE